Michael Angelo MORALES,
Petitioner–Appellant,

v.

Arthur CALDERON, Warden,
Respondent–Appellee.

No. 94–99010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 26, 1995.

Decided June 4, 1996.

David A. Senior, Condon & Forsyth, Los Angeles, California, for petitioner-appellant.

Keith H. Borjon, Deputy Attorney General, Los Angeles, California, for respondent-appellee.

Before: FARRIS, CANBY, and THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

Michael Angelo Morales, a California death-row inmate, appeals the federal district court's dismissal of the majority of the claims he presented in his first habeas corpus petition in district court. The district court dismissed the claims because the California Supreme Court had denied them not only on the merits but also as untimely; they were therefore considered to be defaulted. This is an interlocutory appeal of the district court's ruling. We have jurisdiction pursuant to 28 U.S.C. § 1292(b) and F.R.A.P. 5(a). We reverse the district court's dismissal of the claims and remand for consideration of the merits because we find that the state court's denial of the claims was not based on an adequate and independent state ground that bars federal habeas review.

## BACKGROUND

In 1983, a California jury convicted Morales of first-degree murder, among other charges, and sentenced him to death. The California Supreme Court affirmed the convictions and sentence by opinion on April 6, 1989, amended June 1, 1989. *People v. Morales,* 48 Cal.3d 527, 257 Cal.Rptr. 64, 770 P.2d 244 (Cal.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 520, 107 L.Ed.2d 520 (1989). On June 6, 1989, the California Supreme Court

adopted new policies regarding death penalty cases, including "Standards Governing Filing of Habeas Corpus Petitions and Compensation of Counsel in Relation to such Petitions." *See* Supreme Court Policies Regarding Cases Arising from Judgments of Death, in California Rules of Court—State 745–46 (1990) (hereinafter "Standards").[1] These Standards, effective June 6, 1989, governed "all petitions for writs of habeas corpus arising from judgments of death, whether the appeals therefrom are pending or previously resolved." Standards, Policy 3 at 745.

In November 1989, the United States Supreme Court denied certiorari in Morales's case. Thereafter, Morales obtained new counsel who filed a petition for writ of habeas corpus on July 20, 1992, in federal district court. Morales presented 52 claims.[2] Twenty of these claims were exhausted in the automatic state appeal and raised issues from the trial record. The other claims involved issues that arose from facts outside the record and were discovered by Morales's new counsel.

The district court dismissed the 32 extra-record claims without prejudice and ordered Morales to present those claims to the California Supreme Court.[3] On December 16, 1992, approximately three and one-half years after his convictions were affirmed, Morales filed his first petition for writ of habeas corpus in the California Supreme Court. The petition raised the 32 extra-record claims and one additional, newly-discovered claim. Morales later filed a supplemental petition, which the court treated as a separate habeas corpus petition, raising three additional claims based on newly discovered facts, and presenting newly discovered facts supporting three of the claims raised in the December 16 petition.

The California Supreme Court denied all relief on both petitions, issuing two orders on July 28, 1993, that both stated:

---

1. In July 1993, the California Supreme Court revised the Standards. *See In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 531 n. 18, 855 P.2d 729, 751 n. 18 (1993). The amended Standards were published as an appendix to *Clark. Id.* at 762–64.

2. The federal district court, in its April 29, 1994 Order dismissing Morales's first amended petition for writ of habeas corpus, incorrectly stated that Morales presented 53 rather than 52 claims.

3. The State has since filed in federal district court an answer to the remaining 20 claims that were exhausted in the direct appeal.

Petition for writ of habeas corpus DE-NIED on the merits and as untimely. (See Supreme Court Policies Regarding Cases Arising from Judgments of Death, Stds. 1–1.1 to 1–3; *In re Stankewitz* (1985) 40 Cal.3d 391, 396, fn. 1, 220 Cal.Rptr. 382, 708 P.2d 1260.)[.]

The order dismissing the December 16 petition also stated: Mosk, J. is of the opinion that an order to show cause should issue.

Morales then filed his first amended petition for writ of habeas corpus in federal district court, raising the newly-exhausted claims and two more claims attacking the constitutionality of the California death penalty statute.[4] Morales also re-alleged the 20 claims from the first petition, which the State had already answered and Morales had traversed.

In April 1994, the district court granted the State's motion to dismiss. The district court dismissed the newly-exhausted claims on the ground that they were procedurally defaulted for untimeliness in state court.[5] The district court also dismissed the 20 claims already before it from the first petition, noting that these claims were already under consideration.

The district court found that "the California Supreme Court's procedural bars specifically invoked in this case" were adequate and independent state grounds that supported the Supreme Court's judgment. The district court further found that Morales had "failed to make any particularized showing of cause and prejudice or a fundamental miscarriage of justice to overcome the 'presumption against federal habeas review of claims defaulted in state court.'" *See Coleman v. Thompson*, 501 U.S. 722, 747, 111 S.Ct. 2546, 2563, 115 L.Ed.2d 640 (1991). The court granted Morales's request to make a more

particularized showing of either cause and prejudice or a fundamental miscarriage of justice.

Morales moved for reconsideration in light of *Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995), decided after the district court had entered its order of dismissal. The district court denied the motion.

The district court granted Morales's motion to certify the dismissal of these claims for interlocutory appeal, and we granted permission to appeal pursuant to F.R.A.P. 5(a) and 28 U.S.C. § 1292(b). The district court's certification order stayed further briefing of the questions whether, assuming a default, Morales had shown cause and prejudice or a fundamental miscarriage of justice; those issues consequently are not before us.

### ISSUE

■ The issue for our decision is whether the California Supreme Court's timeliness requirement serves as an adequate and independent state ground for its decision dismissing Morales' petition. If it does, Morales has defaulted procedurally on the affected claims and cannot raise them in federal court unless he shows cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.[6]

### ANALYSIS

Morales argues that the state denial of his claims was not based on an adequate and independent ground barring federal review because (1) the California Supreme Court's habeas corpus timeliness Standards are facially indeterminate, (2) the Supreme Court has applied the Standards with a lack of

---

4. Both of the arguments challenging the constitutionality of the statute have since been rejected by the United States Supreme Court. *See Tuilaepa v. California*, —— U.S. ——, —————, 114 S.Ct. 2630, 2636–39, 129 L.Ed.2d 750 (1994) (holding that California death penalty special circumstances were not unconstitutionally vague); *Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1251, 127 L.Ed.2d 583 (1994) (holding that jury instructions defining "reasonable doubt" did not violate Due Process Clause).

5. The court also dismissed the two claims attacking the death penalty statute, but Morales does not contest this ruling on appeal.

6. The district court's dismissal of the petition for writ of habeas corpus on the ground of state procedural default involves an issue of law that we review *de novo*. *Hunter v. Aispuro*, 982 F.2d 344, 346 (9th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993).

even-handedness, and (3) the Supreme Court's orders of denial are ambiguous and dependent on federal claims. The State, on the other hand, insists that the Standards are adequate neutral rules of judicial administration that, as applied in this case, bar federal review.

 There is usually no doubt that the decision of a state supreme court rests on an adequate and independent state ground when the court's opinion clearly and expressly states that its decision is based on a state procedural rule. *See Coleman*, 501 U.S. at 735–36, 111 S.Ct. at 2557–58 (citing *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989)). A state procedural rule does not bar federal review, however, if it is so unclear that it does not "provide[ ] the habeas petitioner with a fair opportunity to seek relief in state court." *Harmon v. Ryan*, 959 F.2d 1457, 1462 (9th Cir.1992). Nor can a state preclude federal review by invoking procedural rules that the state does not apply consistently. *See Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982). We conclude that the California timeliness standard, as applied to Morales, suffers from both of these deficiencies.

## I. Uncertainty of California's Timeliness Standards

 We find it difficult to articulate California's timeliness requirements as they applied to Morales. The Standards make it clear enough that a petition for habeas corpus is presumed timely if filed within 60 (later 90) days of the final due date of the petitioner's reply brief on direct appeal, Standards § 1–1.2, but Morales's appeal had already been decided at the time the Standards were announced. Neither the Standards themselves nor California cases construing those Standards create an unambiguous rule on timeliness beyond the 60 or 90 days. Further, because the California Supreme Court does not provide reasons for its denials of petitions of habeas corpus on timeliness grounds, it is equally difficult

to discern what criteria the state court applies when ruling on the timeliness of a petition filed beyond the 60 or 90 day period.

The Standards, in pertinent part, state:

1. Timeliness standards

1–1. Appellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. All petitions for writs of habeas corpus should be filed *without substantial delay*.

1–1.1. A petition for a writ of habeas corpus will be presumed to be filed without substantial delay if it is filed within 60 days after the final due date for the filing of appellant's reply brief on the direct appeal.[7]

1–1.2. A petition filed more than 60 days after the final due date for the filing of appellant's reply brief on the direct appeal *may* establish absence of substantial delay if it alleges *with specificity* facts showing the petition was filed within a reasonable time after petitioner or counsel became aware of information indicating a factual basis for the claim and became aware, or should have become aware, of the legal basis for the claim.

1–1.3. Alternatively, a petition *may* establish absence of substantial delay if it alleges *with specificity* facts showing that although petitioner or counsel was aware of the factual and legal bases for the claim before January 16, 1986 (the date of finality of *In re Stankewitz* (1985) 40 Cal.3d 391, 396–397, fn. 1, 220 Cal.Rptr. 382, 708 P.2d 1260), the petition was filed within a *reasonable time* after that date.

1–2. If a petition is filed after substantial delay, the petitioner must demonstrate *good cause* for the delay. A petitioner may establish *good cause* by showing particular circumstances sufficient to justify substantial delay.

1–3. Any petition that fails to comply with these requirements *may* be denied as untimely.

Standards at 745–46 (emphasis added).

The first uncertainty in these Standards inheres in the requirement that petitions for

---

7. Effective September 1990, this period of time was extended to 90 days. *See* California Rules of

Court—State (1995) at 982.

habeas corpus should be filed "without substantial delay." If the petition is filed after substantial delay, then the petitioner must demonstrate similarly uncertain "good cause" for the delay. The source of these requirements is, in part, a footnote in *In re Stankewitz*, 40 Cal.3d 391, 220 Cal.Rptr. 382, 708 P.2d 1260, 1262 n. 1 (1985) (explaining that petitioner "must point to particular circumstances sufficient to justify substantial delay"). In that case, the petitioner filed his first habeas corpus petition a year and a half after obtaining newly-discovered evidence, while direct review of his murder conviction and death sentence was still pending. *Id.* 220 Cal.Rptr. at 383, 384 n. 1, 708 P.2d at 1261, 1262 n. 1. The California Supreme Court held that petitioner had made a sufficient showing of justification for delay. *Id.* at 384 n. 1, 708 P.2d at 1262 n. 1. Neither the Standards nor *Stankewitz*, however, established what amount of delay the court would consider "substantial," nor did either set out criteria for determining "good cause" to excuse such delay. They also did not prescribe whether and when untimeliness might be waived altogether, even though good cause had not been shown.

The vagueness of the Standards could have been cured by narrowing judicial construction in the years immediately following their issuance. We find no such cases, however. The California Supreme Court did attempt to explain at great length its requirements under the Standards in *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), but *Clark* was not decided until a few days after the California Supreme Court denied Morales's petition.

*Clark* asserted that a petitioner whose conviction was affirmed before announcement of the Standards was nevertheless on notice of the delay rules per *Stankewitz*. *Id.* 21 Cal.Rptr.2d at 531, 855 P.2d at 750. Thus, "any substantial delay in the filing of a petition after the factual and legal bases for the claim are known or should have been known must be explained and justified." *Id.* at 533, 855 P.2d at 752. *Clark* also stated, however, that "counsel's obligation to investigate possible claims was created only by the [Standards]," and consequently claims discovered after investigation commencing after the date of publication of the Standards (June 6, 1989) and presented promptly thereafter are timely. *Id.*

Despite *Clark*'s emphasis on the duties of counsel that pre-existed the Standards (as well as the *Clark* opinion itself), *Clark* did acknowledge that "no clear guidelines [regarding departure from the habeas corpus rules] have emerged in our past cases." *Id.* 21 Cal.Rptr.2d at 517, 855 P.2d at 737. *Clark* was an attempt to clear up such uncertainties. We need express no opinion on whether the attempt succeeded, so that timeliness under the Standards invoked post-*Clark* would constitute an adequate and independent state ground of decision; Morales's petition was denied before *Clark*.

We find so much variation in application of California's timeliness requirements before *Clark* that we conclude that no discernible clear rule then existed for petitions filed more than 90 days after the due date of the reply brief on direct appeal. For example, Morales asserts that at the time his case was litigated in the district court, the California Supreme Court had denied 35 habeas petitions filed three years or more after affirmance on direct appeal, and more than half of those denials had not been on grounds of untimeliness. Only 6 cases had been denied on untimeliness alone. The State does not dispute these figures, but asserts that uneven enforcement of the timeliness requirement is simply a reflection of the fact that some discretion is involved in applying the rule. According to the State, the kinds of variation demonstrated by Morales do not call the rule into question unless there is a showing of deliberate manipulation to avoid federal review. The State relies upon *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), which stated that "States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." *Id.* at 372, 110 S.Ct. at 2441.

We cannot accept the State's contention as it is put forth, nor do we find *Howlett* apposite. *Howlett* involved the question whether a state defense of sovereign immunity to a federal-law claim could be available in state court when it would not be so in federal

court. The concern was that the state was discriminating against a federal cause of action, and the Court's neutrality ruling was simply a response to that concern. The actual holding in *Howlett* was that the state immunity rule was substantive and preempted by federal law. *Id.* at 375–81, 110 S.Ct. at 2442–46.

■ Neutrality is not enough when a rule is applied or not applied wholly at random. We must emphasize that the issue here is not whether the State is allowed to invoke its rule irregularly for its own purposes. The question is whether invocation of a state rule that is applied only randomly may preclude a federal court from entertaining a petitioner's federal claim on the merits. We conclude that the answer to that question is "no." The Supreme Court has stated that "a state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'" *Hathorn v. Lovorn,* 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982) (quoting *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964)). The Court has added no requirement of a showing of manipulative intent on the part of the state court.

■ It is true, as the State argues, that procedural rules need not be utterly mechanical. That the application of a rule requires the exercise of judicial discretion does not render the rule inadequate to support a state decision. In fact, a bright-line rule for delay can operate more harshly than a discretionary rule. *See, e.g., Coleman,* 501 U.S. at 727–29, 111 S.Ct. at 2553–54 (affirming dismissal of claims barred in state court because petition filed three days late). But judicial discretion is the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits. To bar federal review, a state procedural rule must be "consistently applied." *Wells v. Maass,* 28 F.3d 1005, 1010 (9th Cir.1994).

It is theoretically possible, we suppose, to reconcile and explain all of the California Supreme Court decisions entertaining on the merits or rejecting as untimely petitions that are three or more years old. Those divergent decisions may indeed represent consistent exercises of discretion rather than random applications of or exceptions to the timeliness rule. But we have no way of knowing whether that is the case. The California Supreme Court's denials of habeas petitions that Morales relies upon were accomplished by brief minute entries in what has been described as "post-card denial." We can discern no apparent relationship between the time of delay and the findings concerning timeliness. Nor could Morales be expected to do so.

We faced a similar problem in *Siripongs v. Calderon,* 35 F.3d 1308, 1318 (9th Cir.1994), where we held that the district court's dismissal of petitioner's claims in a successive habeas petition on procedural grounds was error. We ruled that a state procedural rule that is discretionary and not applied consistently "cannot act as a bar to federal review.... [T]he federal courts should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce." *Id.*

In *Siripongs,* the California Supreme Court had not identified a particular procedural rule that it relied on for default, as it did in Morales's case.[8] We noted this deficiency, holding that a procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review. *Id.* at 1317–18. We also relied, however, on the fact that, at the time the habeas petition was denied by the state court, the state procedural rules regarding filing of successive petitions were not consistently enforced. *Id.* at 1318. Indeed, we recognized that "the strict standards announced in [*Clark* ] did not guide the California courts in 1991, when Siripongs' state petition was denied." *Id.* We conclude

---

8. The order at issue in *Siripongs* stated:
 Petition for writ of habeas corpus DENIED both for reasons of procedural default and on the merits. Petitioner's motion for "post trial

discovery" is denied. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1261, 275 Cal.Rptr. 729, 800 P.2d 1159).
*Siripongs,* 35 F.3d at 1316.

that the latter rationale of *Siripongs* is fully applicable here. Here, as in *Siripongs,* we find that the state court's procedural rule was not consistently enforced at the time Morales's petitions were denied. Although the State and the district court distinguish *Siripongs* because it involved a successive petition for habeas review, that fact casts no doubt upon Siripongs' general principle of consistent enforcement of a procedural bar. Nor is *Siripongs* our first endorsement of that principle: "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells,* 28 F.3d at 1010.

We note that two district courts in this circuit have reached the same conclusion we do with regard to the particular rule at issue in this case. In *Karis v. Vasquez,* 828 F.Supp. 1449, 1463 (E.D.Cal.1993), the petitioner had filed a successive habeas petition in the California Supreme Court and had failed to explain or justify his delay. The state court summarily dismissed his claims. The district court held that "California's rule concerning delay as a bar to habeas is standardless both substantively and as to duration," did not provide petitioner with adequate notice of when his claims would be barred, and consequently did not bar federal relief. *Id.* at 1464; *cf. Odle v. Calderon,* 884 F.Supp. 1404, 1413–14 (N.D.Cal.1995). The *Karis* court explained that discretion *per se* does not invalidate a state rule as an independent and adequate state ground, if the discretion is exercised according to clear and articulated standards. *See Karis,* 828 F.Supp. at 1463–64. On the other hand, if it is exercised in an " 'ad hoc rather than a principled basis,' " it does not bar federal review. *Id.* at 1463. (citation omitted).

We conclude that California's rule on timeliness was not "clear, consistently applied, and well-established" at any time after Morales's convictions were affirmed and before he filed his first state habeas petition. *See Wells,* 28 F.3d at 1010. It consequently cannot serve as an adequate and independent

state ground sufficient to support a procedural default. *See id.*

## II. Independence of the State Procedural Ground

 Morales argues in the alternative that, even if all the claims were properly denied on procedural grounds, these grounds were not clearly independent of the rulings on the merits. Federal habeas review is not barred if the state decision " 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.' " *Coleman,* 501 U.S. at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)). Morales argues that the California Supreme Court's procedural rulings were interwoven with the federal claims because (1) the orders state that the claims are denied also on the merits and (2) the state court's conclusions about timeliness entailed a consideration of the merits. Because we conclude that the timeliness Standards themselves as applied to Morales are not an adequate and independent ground barring federal review, we need not address these arguments.

## CONCLUSION

We reverse the district court's dismissal of Morales's federal habeas corpus claims, which were denied by the California Supreme Court as untimely. We hold that the California Supreme Court's timeliness rule, as applied to Morales and before its further elucidation in *Clark,* did not afford an adequate and independent state ground barring federal review of Morales's claims. We express no opinion as to whether the California Supreme Court has sufficiently narrowed the timeliness standards or applied them consistently since *Clark.*

We remand this matter to the district court for consideration of Morales's claims on the merits.

**ORDER REVERSED; CASE REMANDED.**